# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**ARIANA PALACIOS**,

   Plaintiff,

  v.

**MEDSTAR HEALTH, INC.** *et al.*,

   Defendants.

Case No. 17-cv-0867 (CRC)

## OPINION AND ORDER

Ariana Palacios brought suit against MedStar Health and MedStar Georgetown Medical Center, Inc. alleging discrimination based on her gender identity after the hospital's Department of Plastic Surgery purportedly refused to provide her gender-affirming breast augmentation surgery. After the parties failed to reach an agreement in mediation, Palacios filed a motion seeking to amend her complaint to add additional claims related to a consultation she had with a MedStar Georgetown doctor regarding a different procedure, vocal feminization surgery. MedStar has opposed her motion. Based on the arguments presented by the parties in their briefing and at the hearing, the Court will allow Palacios to amend her federal Affordable Care Act claim but will deny leave to amend her D.C. Human Rights Act claim.

**I. Background**

According to her complaint, on May 4, 2015, Ariana Palacios—a twenty-seven year old transgender woman—telephoned the Department of Plastic Surgery at MedStar Georgetown Medical Center ("MedStar Georgetown") seeking to make an appointment for breast augmentation surgery. Compl. ¶¶ 19–20. Palacios alleges that during the phone call, she was informed that the Department of Plastic Surgery was no longer accepting "trans patients." Id. ¶ 21. A few days later, Palacios asserts that she and a friend went to the Department of Plastic

Surgery in person and were again informed that the Department was not accepting any "trans patients." Id. ¶ 22. Palacios claims she followed this visit up with a phone call to the office of the Chairman of the Department, during which she recounted her prior unsuccessful attempts to obtain an appointment for surgery. Id. ¶ 23. The assistant to whom she spoke allegedly said the Department would return her call within a week, but Palacios says she never received a response. Id.

On August 26, 2015, Palacios filed a charge of discrimination with the D.C. Office of Human Rights related to her interactions with MedStar Georgetown's Department of Plastic Surgery. See Defs.' Opp'n Pl.'s Mot. Leave File Am. Compl. ("Defs.' Opp'n) Ex. A. In it, she alleged that the Department's refusal to schedule her breast augmentation surgery constituted discrimination based on gender identity in violation of D.C.'s anti-discrimination laws. Id. She similarly filed an administrative charge of discrimination against MedStar with the U.S. Department of Health and Human Service's ("HHS") Office for Civil Rights, asserting that the hospital's actions violated the anti-discrimination provision in section 1557 of the Patient Protection and Affordable Care Act ("Affordable Care Act") (codified at 42 U.S.C. § 18116). Pl.'s Mot. Leave File Am. Compl. ("Pl.'s Mot.") at 2.

According to Palacios's proposed amended complaint, after these charges were filed she met with MedStar Georgetown physician Shaum Sridharen, an otolaryngologist. Am. Compl. ¶ 32. During this meeting, Palacios says she sought to obtain a video recording of her vocal chords to provide to a surgeon in Boston who was scheduled to perform voice feminization surgery on her. Id. Palacios claims that when Dr. Sridharen learned of the nature of her procedure, he refused to provide her a copy of the video recording. Id. ¶ 34. Palacios subsequently amended her federal administrative charge to encompass the incident with Dr.

Sridharen. Defs.' Opp'n Ex. B (letter of Nov. 12, 2015). There is no evidence that Palacios ever similarly amended her D.C. administrative charge.

On May 10, 2017, Palacios withdrew her pending D.C. charge.[1] She then filed suit in this Court against MedStar Health, Inc. and MedStar Georgetown (collectively "MedStar"). Her complaint alleges that her interactions with the MedStar Georgetown Department of Plastic Surgery constituted discrimination on the basis of gender identity in violation of the D.C. Human Rights Act, D.C. Code § 2-1402.21, and in violation of section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a). Compl. ¶¶ 30, 42. The complaint as originally filed did not include any allegations concerning her interaction with Dr. Sridharen. After MedStar filed its answer, the parties agreed to undergo mediation, which proved unsuccessful. On November 17, 2017, Palacios filed a motion to amend her complaint, seeking to flesh out her allegations and add claims related to the Sridharen interaction. MedStar opposed her motion, and the Court held a hearing on January 30, 2018. The Court will now grant Palacios's motion in part and deny it in part.

## II. Legal Standard

Under Federal Rule of Civil Procedure 15(a)(2), a plaintiff may file an amended complaint after an answer has been served only with the opposing party's consent or with leave of court. The Court "should freely give leave when justice so requires." Id. Leave may be denied in cases involving "undue delay, bad faith or dilatory motive on the part of the movant,

---

[1] Palacios's federal charge with HHS's Office for Civil Rights remains pending. In 2016, the District Court for the Northern District of Texas issued a nationwide preliminary injunction prohibiting HHS from enforcing the anti-discrimination provision of the Affordable Care Act as to allegations of gender identity discrimination. See Franciscan Alliance, Inc. v. Burwell, 227 F. Supp. 3d 660, 695–96 (N.D. Tex. 2016). The existence of that injunction makes it unlikely that her federal administrative charge will be acted on anytime soon.

3

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). In particular, if an amendment would not survive a motion to dismiss—such as where a claim sought to be added is barred by the statute of limitations—amendment is futile and should be denied. See, e.g., James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996). A defendant has the burden of showing why leave to file an amended complaint should be denied. See, e.g., Smith v. Café Asia, 598 F. Supp. 2d 45, 48 (D.D.C. 2009).

### III. Analysis

As Palacios's counsel clarified at the hearing, Palacios seeks to amend both her claim under the Affordable Care Act (the "section 1557 claim") and her claim under the D.C. Human Rights Act (the "D.C. law claim"). Medstar argues that leave to amend should be denied because (1) the claims Palacios seeks to add are barred by the applicable statutes of limitations, and (2) Palacios acted with undue delay, bad faith, and dilatory motive in seeking to amend her complaint. See Defs.' Opp'n at 5, 11.

### A. Palacios's section 1557 claim

#### 1. *Statute of Limitations*

Medstar first argues that the section 1557 claim that Palacios seeks to add is barred by the statute of limitations. In fact, counsel for Medstar suggested at the hearing that *all* of Palacios's section 1557 claims are barred by the statute of limitations. This is so, Medstar contends, because the one-year statute of limitations governing D.C. Human Rights Act claims applies to Palacios's section 1557 claims. See Defs.' Opp'n at 5. Palacios contends that the three-year statute of limitations governing D.C. personal injury claims applies instead. See Pl.'s Reply at

4

2–3.  Neither side is correct.  The Court finds that Palacios's section 1557 claim is actually governed by the federal four-year catchall statute of limitations set forth in 28 U.S.C. § 1658(a) and the claim is therefore timely.

Section 1557 of the Affordable Care Act prohibits discrimination by "any health program or activity" on the basis of race, gender, age, or disability.  42 U.S.C. § 18116(a).  But rather than crafting a new discrimination prohibition wholesale, section 1557 borrows from four preexisting anti-discrimination statutes: Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., which prohibits discrimination on the basis of race; Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., which prohibits discrimination on the basis of gender; the Age Discrimination Act, 42 U.S.C. § 6101 et seq.; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits discrimination on the basis of disability.  Id.  The Affordable Care Act states that "[t]he enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations" of section 1557.  Id.  Section 1557 does not, however, provide a specific statute of limitations. See id.  The Court, therefore, must determine the appropriate statute of limitations to apply.

While neither party raises it, there seems to be a relatively clear answer to this question: the four-year catchall statute of limitations.  Under 28 U.S.C. § 1658(a), "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1990] may not be commenced later than 4 years after the cause of action accrues."  Section 1658(a) thus alleviates the host of problems caused by the absence of a statute of limitations in a federal law and the consequent need for a federal court to determine the most applicable state statute of limitations to borrow.  See Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369, 382 (2004); H.R. Rep. No. 101-734, at 24 (1990).  Prior to its enactment, courts and commentators had repeatedly

5

"cal[led] upon Congress to eliminate these complex cases, that do much to consume the time and energy of judges but that do little to advance the cause of justice, by enacting federal limitations periods for all federal causes of actions." Jones, 541 U.S. at 379–80 (quoting Sentry Corp. v. Harris, 802 F.2d 229, 246 (7th Cir. 1986)). Congress finally responded to these requests in 1990 by "creating a four-year fallback statute of limitations, applicable to legislation enacted after the effective date of [section 1658(a)], which creates a cause of action but is silent as to the applicable limitations period." H.R. Rep. No. 101-734, at 24 (1990).

Section 1557 is just such a piece of legislation. Palacios's section 1557 claim arises under 42 U.S.C. § 18116(a), which was enacted in 2010 as part of the Affordable Care Act. Thus, her civil action "arises under an Act of Congress enacted after" the December 1990 enactment date of the catch-all statute of limitations in section 1658(a). See Jones, 541 U.S. at 382 (holding that a cause of action arises under a post-1990 Act of Congress "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment"). And because section 1557 is silent as to a statute of limitations, the four-year catchall statute is the appropriate one to apply to Palacios's claim.[2] Her claim is thus timely.

---

[2] Even if the Court were to engage in the complex exercise that section 1658(a) was enacted to avoid, it would still find Palacios's claim timely. In the absence of the catchall statute of limitations, the Court would turn to Title IX to determine a statute of limitations because section 1557 specifically directs that the "enforcement mechanisms provided for and available under" Title IX "shall apply" to such violations of section 1557, 42 U.S.C. § 18116(a). See Briscoe v. Health Care Service Corp., 2017 WL 5989727, at *9 (N.D. Ill. Dec. 4, 2017) (applying Title IX standards to claim of gender discrimination under section 1557). And every court of appeals to have considered the question has applied the state personal injury statute of limitations to Title IX claims. See, e.g., King-White v. Humble Independent School Dis., 803 F.3d 754, 759 (5th Cir. 2015) (compiling cases); see also Richards v. Duke University, 480 F. Supp. 2d 222, 238 (D.D.C. 2007) (applying D.C.'s three-year personal injury statute to Title IX claim). The Court would thus apply D.C.'s three-year statute of limitations for personal injury claims.

*2. Undue delay, bad faith, and dilatory motive*

MedStar argues that even if amendment is not futile, leave to amend should still be denied because Palacios's failure to raise the Sridharen claims earlier "amounts to, at best, undue delay and dilatory motive, and could be construed as bad faith." Defs.' Opp'n at 11. The Court disagrees.

For one, Palacios has not exhibited undue delay in moving to amend her complaint. She filed suit in May 2017 and formally moved to amend her complaint six months later, in November 2017. MedStar's counsel was informed at the mediation session in October of Palacios's intent to file an amended complaint and was provided a copy of that complaint. Given the parties' attempt at mediation—which they agreed to undergo about two months after the complaint was filed—it makes sense that Palacios would wait until mediation proved unsuccessful to file her motion for leave to amend, and she acted promptly thereafter. A delay of six months is hardly an eternity in the lifespan of a civil lawsuit.

Nor is MedStar prejudiced by the delay between the initial filing of the complaint and the motion to amend: discovery here has not yet begun, nor has the Court confronted any dispositive motions. This is not a case where a plaintiff has waited years, until discovery has concluded or the eve of trial arrives or the Court grants a defendant's dispositive motion, to suddenly move to amend the complaint. Cf. Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 247 (D.C. Cir. 1987) (affirming denial of motion to amend filed "years after [plaintiff] had filed its original complaint, after the parties had conducted extensive discovery, and after the district court had granted a summary judgment motion against" the plaintiff). A six-month delay is not undue given this case's procedural history and status.

Nor has MedStar met its burden of showing bad faith. See Sherrod v. McHugh, 249 F. Supp. 3d 85, 87 (D.D.C. 2017) ("Preventing a party from amending her complaint on the basis of bad faith generally requires an affirmative showing by the nonmoving party."). Palacios explained that her current counsel—Kilpatrick Townsend & Stockton—was not the same counsel that handled her administrative appeals in 2015 and 2016—Whitman Walker Health Legal Services. Pl.'s Mot. at 3. Her current counsel represented that it prepared the original complaint and then learned of the Sridharen claims in August 2017, in a meeting with Palacios to prepare for the parties' mediation session in October 2017. Id. at 3–4. Counsel sought leave to amend promptly after mediation failed. MedStar presents nothing to counter this explanation for the delay, and any miscommunication or failure to meet with Palacios sooner, standing alone, does not show bad faith. In sum, MedStar has offered no evidence of bad faith here, and the six-month delay—particularly given the parties' attempt at mediation in the interim—is not enough by itself to show bad faith, undue delay, or dilatory motive. The Court will therefore grant Palacios leave to amend her section 1557 claim.

B. Palacios's D.C. law claim.

Palacios's counsel clarified at the hearing that she also seeks to amend her D.C. law claim. MedStar, again, contends that leave should be denied on the same grounds as for her section 1557 claim. Because MedStar is correct that Palacios's claim concerning Dr. Sridharen would be barred by the applicable D.C. statute of limitations, amendment would be futile. Palacios's motion will therefore be denied as to this claim.

Palacios's D.C. law claim has a clear statute of limitations: D.C. law provides that claims arising under the D.C. Human Rights Act must be filed within one year of the alleged discriminatory act. D.C. Code § 2-1403.16(a). Because the events at issue occurred before

8

November 20, 2015, Palacios would have needed to file suit before November 20, 2016 to preserve her D.C. law claims. Her lawsuit was filed in May 2017. As such, the claim she seeks to add would be barred by the statute of limitations.[3]

Palacios nonetheless contends that the tolling provision in the D.C. statute of limitations applies and saves her claim from being barred. The D.C. statute of limitations provides that "[t]he timely filing of a complaint with the [D.C.] Office [of Human Rights] . . . shall toll the running of the statute of limitations while the complaint is pending." D.C. Code § 2-1403.16(a). Palacios argues that the charge she filed with the D.C. Office of Human Rights on August 26, 2015 and the charge she filed with HHS's Office for Civil Rights in October 2015 both triggered this tolling provision. But neither of these administrative charges tolls the limitations period.

First, Palacios's D.C. charge: This charge was filed on August 26, 2015, prior to the incident with Dr. Sridharen in November 2015. Unsurprisingly, then, it does not mention the incident with Dr. Sridharen. See Defs.' Opp'n Ex. A. Nor has Palacios presented any evidence that she amended her D.C. charge to encompass the Dr. Sridharen incident or filed a separate charge regarding that claim. The absence of any reference to the Dr. Sridharen incident means that Palacios's D.C. complaint does not toll the statute of limitations as to the Sridharen D.C. law claim.

---

[3] For this reason, the Court need not address the parties' arguments regarding the relation back doctrine. Even if Palacios's amended complaint did relate back to her original complaint, that complaint was not filed within the one-year statute of limitations.

Palacios also appears to argue that her complaint relates back to her original administrative charge. The Court is unaware of any precedent allowing an amended complaint to relate back to an administrative charge rather than the original complaint—which is unsurprising since Federal Rule of Civil Procedure 15(c) provides for relation back to a party's original pleading and a charge filed with an agency is not a pleading.

Next, Palacios's charge with HHS's Office for Civil Rights: This charge was ultimately amended to encompass the Dr. Sridharen incident. See Defs.' Opp'n Ex. B. But the statute of limitations is tolled by the filing of a charge *with the D.C. Office of Human Rights*, not just the filing of any administrative charge. See D.C. Code § 2-1403.16(a) ("The timely filing of a complaint *with the Office* . . . shall toll the running of the statute of limitations while the complaint is pending." (emphasis added)).[4] Because this charge was filed with the HHS Office for Civil Rights and not the D.C Office of Civil Rights, under the plain language of the D.C. statute it does not toll the statute of limitations. In the absence of any tolling, the addition of the Sridharen allegations to Palacios's D.C. law claim is barred by the statute of limitations. Amendment would therefore be futile, so the Court will deny Palacios leave to amend her D.C. law claim.

\* \* \*

---

[4] Admittedly, the filing of a charge with the federal Equal Employment Opportunity Commission ("EEOC") would trigger the tolling provision in the D.C. statute of limitations. See, e.g., Estenos v. PAHO/WHO Federal Credit Union, 952 A.2d 878, 886 (D.C. 2008). This is so because of the work-sharing agreement between the D.C. Office of Human Rights and the EEOC, whereby any charge filed with the EEOC is automatically cross-filed with the D.C. Office of Human Rights. See, e.g., id. As far as the Court is aware, no such similar work-sharing agreement exists between HHS's Office for Civil Rights and the D.C. Office of Civil Rights. As a result, nothing indicates that the D.C. Office ever received a copy of the charge filed with HHS's Office and there is no reason to extend the unique treatment of EEOC charges to encompass the federal charge here.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [16] Plaintiff's Motion for Leave to File Amended Complaint is GRANTED IN PART and DENIED IN PART. Plaintiff will be granted leave to amend her federal claim under the Affordable Care Act but will be denied leave to amend her D.C. law claim under the D.C. Human Rights Act. The Court will issue a separate discovery scheduling order.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: February 20, 2018